## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAFFER INSURANCE COMPANY, LTD., | |
| Plaintiff, | NO. 3:07-CV-00580 |
| v. | |
| DISCOVER REINSURANCE COMPANY, et al., | (JUDGE CAPUTO) |
| Defendants. | |

### MEMORANDUM

Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative to abstain, or in the alternative to compel arbitration.  (Doc. 8.)  Because Defendant Discover Reinsurance Company ("Discover-Re") and Plaintiff Gaffer Insurance Company, Ltd. ("Gaffer") entered into an agreement to arbitrate, and the claims fall within the scope of the agreement, the Court will compel arbitration between Plaintiff Gaffer and Defendant Discover-Re.  Because Plaintiff has failed to state a claim upon which relief can be granted against Defendants United States Fidelity and Guaranty Company ("USF&G") and The St. Paul Travelers Companies, Inc. ("St. Paul Travelers"), all claims against those Defendants will be dismissed pursuant to Rule 12(b)(6).  As the Court will dispose of all claims based upon the motion to compel arbitration and the motion to dismiss, the *Colorado River* abstention doctrine will not be addressed.

### BACKGROUND

The facts as alleged in Plaintiff's Complaint are as follows.

Plaintiff Gaffer is a foreign insurance company, which in this case acted as a re-insurer.  (Compl. ¶¶ 6, 10, Doc. 1.)  Defendants Discover-Re, USF&G, and St. Paul Travelers are domestic insurance companies that conduct business in Lackawanna County, Pennsylvania.  (*Id.* ¶¶ 2-4.)  Discover-Re is a wholly owned subsidiary of USF&G, which is in turn a wholly owned subsidiary of St. Paul Travelers.  (*Id.* ¶¶ 7, 8.)

On or about May 1997, Gaffer entered into a Captive Reinsurance Agreement ("Agreement") with Discover-Re, where Gaffer agreed to act as a re-insurer for part of the policies insured by Discover-Re.  (*Id.* ¶ 10.)  Reinsurance occurs when insurance companies pass along some of the risks of insuring to other insurance companies.  (*Id.* ¶ 9.)  The reinsurance companies then insure part of the original policy, and in turn receive part of the premium.  (*Id.*)  In the Agreement, Gaffer ceded certain premiums in exchange for its insurance obligations.  (*Id.* ¶ 11.)  These premiums were then deposited into a "loss payment fund account."  (*Id.*)  This account was drawn on by the claims administrator when necessary to pay losses within Gaffer's reinsurance limits pursuant to the Agreement.  (*Id.*)  When the funds were insufficient, the Agreement required Gaffer to forward sufficient funds to be placed in the account for payment of losses.  (*Id.*)

The Agreement further required Gaffer to provide Discover-Re with collateral to secure Gaffer's reinsurance obligations.  (*Id.* ¶ 13.)  The collateral was in the form of either irrevocable letters of credit or a security trust fund. (*Id.*)  Between 1997 and 2004, Gaffer posted $4,083,100 in letters of credit.  (*Id.* ¶ 16.)  During the first three years of the relationship, these funds secured one hundred percent (100%) of the gross written premium, or GAP.  (*Id.* ¶ 17.)  During the fourth through ninth years, the letters of credit

secured eighty percent (80%) to ninety percent (90%) of the gross written premium.  (*Id.* ¶ 18.)

Plaintiff also had additional requirements pursuant to the Agreement, such as filing a Schedule F document with the insurance department, and posting security for these filings.  (*Id.* ¶ 19).  The Agreement further required that on November 14, 1998, and at the end of each year thereafter, the amount of collateral was to be reduced by the difference between the current amount of collateral and the reinsurance obligations.  (*Id.* ¶ 20.)  The reinsurance obligations included ultimate net loss and loss adjustment paid by Discover-Re but not recovered from Gaffer, as well as outstanding case reserves for ultimate loss, reserves for ultimate net loss and lost adjustment with respect to IBNR, reserves for loss adjustment expenses and unearned premium reserves.  (*Id.* ¶ 21.)

On or about May 2003, Gaffer terminated its relationship with Discover-Re.  (*Id.* ¶ 28.)  At that time, no more insurance was being written, no further premiums were coming in, and there was no more GAP.  (*Id.* ¶ 29.)  Following the termination of the relationship, the number of open claims declined, the open claims were paid or an amount was retained for those claims, and the amount of Gaffer's exposure was capped at a certain amount.  (*Id.* ¶ 29.)  By May 14, 2004, the maximum amount of exposure by Gaffer was $1,250,000.  (*Id.* ¶ 30.)  Gaffer alleges that on that date, $2,833,100 of letters of credit should have been released.  (*Id.* ¶ 31.)

Defendants list the amount of $4,083,100 in letters of credit on their financial statements and on the Schedule F.  (*Id.* ¶ 34.)  On May 14, 2004, Brian Murray of Gaffer wrote to Discover-Re requesting that $2,188,100 of the letter of credit be released.  (*Id.* ¶

32.)  The Defendants offered to release only $300,000, but that amount was never released.  (*Id.* ¶ 33.)  On October 24, 2004, Murray again requested some letters of credit be released in the amount of $688, 200.  (*Id.* ¶ 37.)  On January 3, 2007, Christine Oliver of Gaffer requested that $3,802,100 be released.  (*Id.* ¶ 40.)  Then on February 7, 2005, Oliver requested that $2,588,537 be released.  (*Id.* ¶ 38.) Defendants have not responded to Oliver's requests.  (*Id.* ¶¶ 39, 41.)  Defendants have failed to release any amounts on the letters of credit.  (*Id.* ¶ 35.)

On March 23, 2007, Plaintiff Gaffer filed its Complaint against Defendants Discover-Re, USF&G, and St. Paul Travelers, alleging claims of bad faith pursuant to 42 PA. CONS. STAT. ANN. § 8371, a breach of the covenant of good faith and fair dealing, a breach of fiduciary duty, and negligence.  (Doc. 1.)  On June 1, 2007, Defendants filed the present motion to dismiss, or in the alternative to abstain, or in the alternative to compel arbitration.  (Doc. 7.)  This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

### I.       Motion to Compel Arbitration

Under Pennsylvania law, parties must submit their claims to arbitration if: (1) the parties entered into an agreement to arbitrate and (2) the dispute falls within the scope of the agreement.  *Messa v. State Farm Ins. Co.*, 641 A.2d 1167, 1168 (Pa. Super. 1994). Motions to compel arbitration are governed under the summary judgment standard set forth in FED. R. CIV. P. 56(c).  *InterDigital Commc'ns Corp. v. Fed. Ins. Co.*, 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005).  Summary judgment is appropriate where the moving party

establishes that "there is no genuine issues as to any material fact and that [it is] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

In considering a motion to compel arbitration, the Court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Versage v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1361 (3d Cir. 1993). The Court's function is not to weigh evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

## II.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all of the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As a result of the *Twombly* holding, Plaintiff must now nudge its claims "across the line from conceivable to plausible" to avoid dismissal thereof. *Id*. The Supreme Court noted just two weeks later in *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), that *Twombly* is not inconsistent with the language of Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . .

5

. claim is and the grounds upon which it rests.' " *Id.* (citing *Twombly*, 127 S.Ct. at 1959 (quoting *Conley*, 355 U.S. at 47)).

There has been some recent guidance from the Courts of Appeals about the apparently conflicting signals of *Twombly* and *Erickson*. The Second Circuit Court of Appeals reasoned that "the [Supreme] Court is not requiring [in *Twombly*] a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). Similarly, the Seventh Circuit Court of Appeals stated that "[t]aking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, — F.3d —, 2007 WL 2406859, at *4 (7th Cir. Aug. 24, 2007).

Until further guidance, this Court will follow the guidance of the Second and Seventh Circuit Courts of Appeals, and apply a flexible "plausibility" standard, on a case-by-case basis, in those contexts in which it is deemed appropriate that the pleader be obliged to amplify a claim with sufficient factual allegations.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly

authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will ultimately prevail.  *See id.*  In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### I.      Motion to Compel Arbitration between Gaffer and Discover-Re

Defendant Discover-Re has moved to compel arbitration against Plaintiff Gaffer based upon one of the provisions in the Reinsurance Agreement.  Under Pennsylvania law, parties must submit their claims to arbitration if (1) the parties entered into an agreement to arbitrate and (2) the dispute falls within the scope of the agreement. *Messa*, 641 A.2d  at 1168.

7

As a matter of public policy, Pennsylvania courts favor arbitration. *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1171 (Pa. Super. 1997). However, it is well-settled that absent an agreement to arbitrate an issue, the parties cannot be compelled to arbitration. *Lincoln Univ. Of Com. Sys. of Higher Ed. v. Lincoln Univ. Chapter of Am. Ass'n of Univ. Professors*, 354 A.2d 576, 580 (Pa. 1976) (citations omitted).

The Federal Arbitration Act further sets forth the validity of arbitration agreements, stating that "A written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity. . . ." 9 U.S.C. § 2. The Third Circuit Court of Appeals has interpreted the Federal Arbitration Act to be construed broadly, stating that "the Act is entitled to a construction which will accomplish its purpose and should not be hedged about with imagined limitations." *Donahue v. Susquehanna Collieries Co.*, 138 F.2d 3, 6 (3d Cir. 1943). The purpose of the Federal Arbitration Act was to reverse hostility towards arbitration agreements and place them "upon the same footing as other contracts." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1113 (3d Cir. 1993).

In *Thibodeau v. Comcast Corp.*, 812 A.2d 874 (Pa. Super. 2006), the Pennsylvania Superior Court considered the interplay between Pennsylvania state law and the federal law with respect to arbitration. The court held that the Federal Arbitration Act did not preempt all state law relating to arbitration. *Id.* at 879-80. The *Thibodeau* court specifically held that when deciding the "specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that

8

govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." *Id.* at 878 (citations and quotations omitted).  Federal courts in this Commonwealth have agreed, finding that written arbitration agreements are subject to the same defenses as general contracts, and that "'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 605 (E.D. Pa. 2007) (quoting *First Options of Chicago, Inc. V. Kaplan*, 514 U.S. 938, 944 (1995)).  Therefore, the general principles of Pennsylvania contract law apply in construing the parties' Agreement.

Pennsylvania law generally requires that contracts be interpreted as a whole, and an interpretation that gives effect to both of the "conflicting" provisions is preferred. *Capek v. DeVito*, 767 A.2d 1047, 1050 (Pa. 2001.)  Pennsylvania has long held that

> It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument.  An interpretation will not be given to one part of a contract which will annul another part of it.

*Neal D. Ivey Co. v. Franklin Assocs., Inc.*, 87 A.2d 236, 239 (Pa. 1952).  Therefore, in analyzing the contract terms in hand, the Court will look to construe the two provisions so that one does not annul the other.

The first disputed section in the Agreement is Article 19, which states:

ARTICLE 19

ARBITRATION

Any dispute between the parties to this agreement will be submitted for decision of a board of arbitration composed of two arbitrators and an umpire, meeting in Farmington, CT,

unless otherwise agreed to by us and you.

(Agreement, dated January 21, 1998, Article 19 at 14, Doc. 8 Ex. A.)

Article 19 of the Reinsurance Agreement constitutes a broad provision for the utilization of arbitration to resolve disputes.  It states that "*Any* dispute . . . *will be submitted* for decision by a board of arbitration . . . unless otherwise agreed. . . ." (Agreement, Article 19 at 14.)  The word "any" reflects that all types of disputes are to be resolved by arbitration.  Similarly, the word "will" implies a mandatory submission to arbitration, in contrast to terms like "may" or "can", which would imply a voluntary submission.  The only exception to this mandatory submission to arbitration is "unless otherwise agreed."  Therefore, the parties have agreed to mandatory arbitration, and have expressly provided that an agreement "otherwise" would be the only instance in which the parties could avoid the arbitration of their dispute.

However, Plaintiff Gaffer argues that the parties are not required to submit their dispute to arbitration based on Article 17 in the Agreement.  The provision reads:

<u>ARTICLE 17</u>

SERVICE OF SUIT

This Article applies only to a reinsurer domiciled outside the United States of America . . . .

It is agreed that in the event of [Gaffer's] failure to pay any amount claimed to be due hereunder, [Gaffer] at [Discover's] request, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in the Article constitutes or should be understood to constitute a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction within the United States, to remove an action to a United States district court or to seek a transfer of a case to another court as determined by the laws of the United States or of any state in the United States.

> It is further agreed that service of process in such suit may be
> made upon Gaffer Insurance Company, Ltd, c/o Murray
> Insurance Agency, 415 Spruce Street, Scranton, PA 18501,
> attention Chris Oliver and that in any suit instituted against
> [Gaffer] upon this Agreement, you will abide by the final
> decision of such court or of an appellate court in the even of
> an appeal.

(Agreement, Article 17 at 13.)

Plaintiff argues that the arbitration clause in Article 19 is not mandatory based upon the inclusion of Article 17.  Gaffer further argues that this provision is an agreement "otherwise" within the scope of the arbitration provision's exception clause.  Essentially, Gaffer claims that by incorporating this provision in the Reinsurance Agreement, the parties did "otherwise agree" not to arbitrate their disputes.  This interpretation would essentially change the mandatory arbitration provision to a voluntary arbitration provision.

Such an interpretation is not permitted by the Commonwealth's preference to read conflicting provisions as to give meaning to both.  If Article 17 was read to mean that it was the agreement "otherwise" under Article 19, the inclusion of Article 19 would be rendered meaningless.  The term "unless otherwise agreed" in Article 19 refers to an agreement outside of the Agreement.

In reading Article 19 to require mandatory arbitration, Article 17 is not rendered meaningless.  This provision is also a consent to jurisdiction, requiring Plaintiff Gaffer, as a foreign corporation, to "submit to the jurisdiction of a court of competent jurisdiction within the United States."  (Agreement, Article 17 at 13.)  Furthermore, the provision states that "[n]othing in the Article constitutes . . . a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction within the United States. . . ." (Agreement, Article 17 at 13).  The phrasing of this part of Article 17 is also compatible

11

with Article 19.  The mandatory arbitration provision does not completely eliminate the possibility that parties may additionally rely upon the courts.  For example, the parties may need to file an action to compel or enforce arbitration.  Additionally, if the parties utilize the exception in the arbitration provision, they can mutually agree to resolve their issues in court.

Plaintiff further argues that Article 17 should be interpreted to permit court resolution because "[n]othing in the Article constitutes . . . a waiver of . . . rights." (Agreement, Article 17 at 13.)  This phrase addresses a waiver of rights, and does not confer a specific right to sue.  The waiver of rights clause addresses the fact that Gaffer has not waived its rights with regards to consent to jurisdiction and service of process.

The reading of these two provisions in this manner gives full effect to both the arbitration and service of process/consent to jurisdiction provisions.  Although this reading is based upon Pennsylvania state law, other jurisdictions have arrived at similar resolutions when dealing with arbitration clauses.  *See e.g., Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 n. 3 (3d Cir. 1987), *abrogation on other grounds recognized by Delgrasso v. Spang & Co.*, 903 F.2d 234, 236 n. 2 (3d Cir. 1987) (holding that an arbitration clause and a forum selection/consent to jurisdiction clause could both be given effect under federal law); *Bank Julius Bear & Co, Ltd. V. Waxfield Ltd.*, 424 F.3d 278, 284-85 (2d Cir. 2005) (concluding that a forum selection/consent to jurisdiction clause was complementary to an arbitration provision); *Johnson County, N.C. v. R.N. Rouse & Co., Inc.*, 414 S.E.2d 30, 34 (N.C. 1992) (applying North Carolina law, and finding that a consent to jurisdiction provision did not nullify the

12

plain meaning of an arbitration provision).

The arguments made in this case are especially similar to those in *Internet East, Inc. v. Duro Commc'ns, Inc.*, 553 S.E.2d 84 (N.C. App. 2001).  In that case, a North Carolina appellate court determined that an arbitration clause and forum selection clause should be read as complementary.  *Id.* at 86-87.  The arbitration clause in *Internet East* was similar to the provision in the case at bar, in that it read that "unless the parties agree otherwise, all claims . . . shall be decided by arbitration. . . . " *Id.* The forum selection clause in *Internet East* stated that "the State courts of North Carolina shall have sole jurisdiction. . . ." *Id.* at 86.  The appellees argued that the forum selection clause giving "sole jurisdiction" to the North Carolina state courts was an "agree[ment] otherwise," rendering the arbitration clause voluntary, rather than mandatory.  The court in *Internet East* held that the two clauses should be read to give both effect, and held the arbitration clause to be mandatory.  *Id.*

Furthermore, the Pennsylvania Superior Court has specifically dealt with the same arbitration and service of process provisions contained in the same Agreement between the two parties, which is now before this Court.  The Superior Court held that the arbitration provision in the Reinsurance Agreement is mandatory, rather than permissive, in *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, No. 1023 MDA 2006 (Pa. Super. Sept. 20, 2007).  This Court agrees with the panel's reasoning.

Therefore, the parties did enter into an agreement to arbitrate.  Next, it must be determined whether the dispute falls within the scope of the agreement.  The arbitration provision clearly states that "*[a]ny* dispute between the parties" is subject to arbitration.

13

As this dispute falls within the broad scope of the arbitration provision, the parties are compelled to arbitrate.  The Court will grant the Defendants' motion to compel arbitration between Plaintiff Gaffer and Defendant Discover-Re.

**II.     Motion to Dismiss against United States Fidelity and Guaranty Company and the St. Paul Travelers Companies, Inc.**

A.     Bad Faith Pursuant to PA. CONS. STAT. ANN. §8371

Plaintiff's first cause of action against Defendants USF&G and St. Paul Travelers is based upon 42 PA. CONS. STAT. ANN. § 8371, which is titled "Actions on insurance policies."  The relevant section states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

*Id.*  Plaintiff has failed to state a claim within the scope of this statute.  Section 8371 is inapplicable in the context of reinsurance agreements.  The statute specifies that the action must "aris[e] under an insurance policy."  *Id.*  In *Boring v. Erie Ins. Group*, 641 A.2d 1189 (Pa. Super. 1994), the court noted that Section 8371 deals with a variety of  types of insurance policies.  However, reinsurance agreements have not been analyzed pursuant to this provision. *See e.g.*, *Eastern Stainless Corp. v. American Protection Insurance Co.*, 829 F. Supp. 797 (D. Md. 1993) (fire insurance); *Coyne v. Allstate Ins. Co.*, 771 F. Supp. 673 (E.D. Pa. 1991) (homeowner's insurance); *MacFarland v. U.S. Fidelity & Guarantee Co.*, 818 F. Supp. 108 (E.D. Pa. 1993) (marine insurance);

*Margolies v. State Farm Fire and Casualty Co.*, 810 F. Supp. 637 (E.D. Pa. 1992) (fire and casualty insurance); *Mabel v. Equitable Life Assurance Society of the United States*, No. 92-2721, 1992 WL 151781 (E.D. Pa. June 22, 1992) (life insurance).

Furthermore, "[t]he purpose of section 8371 was to provide a statutory remedy to an insured when the insurer denied benefits in bad faith." *Gen. Accident Ins. Co. v. Fed. Kemper Ins. Co.*, 682 A.2d 819, 822 (Pa. Super. 1996).  Indeed, this statute was intended to protect a consumer from an insurance company, and not to protected two sophisticated, bargaining parties from one another.  The dispute at hand is inapplicable to this statute, and therefore the Court will grant the Defendants' motion to dismiss against Defendants USF&G and St. Paul Travelers.

### B.    Good Faith and Fair Dealing

Pennsylvania does not generally recognize a breach of the implied covenant of good faith and fair dealing independently from a breach of contract cause of action.  *See Chanel, Inc. v. Jupiter Group, Inc.*, Civ. A. No. 3:04-CV-1540, 2007 WL 1793223, at *6 (M.D. Pa. June 27, 2006) (quoting *String v. Chandler Hall Health Srvs., Inc.*, No. 99-6218, 2000 U.S. Dist. LEXIS 3351, at *9 (E.D. Pa. Mar. 20, 2000) (citations omitted)). However, in the insurance context, the Pennsylvania Supreme Court has permitted claims based upon the implied covenant of good faith and fair dealing separate from a breach of contract claim.  *Guthrie Clinic, Ltd. v. The Travelers Indemnity Co. of Illinois,* No. 3:00-CV-1173, 2000 WL 1853044, at *3 (M.D. Pa. Dec. 18, 2000) (citing *Birth Ctr. v. St. Paul Cos. Inc.*, 747 A.2d 376 (Pa. 2001)).  "The duty of an insurer to act in good faith 'arises because the insurance company assumes a fiduciary status by virtue of the

policy's provisions which give the insurer the right to handle claims and control settlement.'"  *Brown v. Progressive Ins. Co.*, 860 A.3d 493, 500 (Pa. Super. 2004) (quoting *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1231 (Pa. 1994)). *Romano* further discussed the rationale behind an insurer's requirement of good faith. *Romano*, 646 A.2d at 1231.  The court noted that there was a special relationship between insurers and the insured based upon the nature of an insurance contract.  *Id.*

As stated above, insurance contracts between an insurance company and a consumer differ greatly from a reinsurance contract between two sophisticated parties with equal bargaining power.  Therefore, the insurance exception allowing a breach of the implied covenant of good faith and fair dealing independently from a breach of contract cause of action does not apply here.  Upon review of the Complaint, Plaintiff has failed to allege a breach of contract claim to go with its claim for breach of the implied covenant of good faith and fair dealing.  As the general rule applies, this claim will be dismissed against Defendants USF&G and St. Paul Travelers, as a cause of action for breach of the implied covenant of good faith and fair dealing cannot remain independently from a breach of contract cause of action**.**

C.     Fiduciary Duty

The Supreme Court of Pennsylvania has established the circumstances where a fiduciary relationship can occur.  For example, a fiduciary relationship may exist as a matter of law, for example, in the attorney-client relationship.  *Truver v. Kennedy,* 229 A.2d 468, 474 (Pa. 1967). Or, it may occur "as a matter of fact wherever one person has reposed a special confidence in another to the extent that the parties do not deal with

each other in equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other." *Id.*  In the context of an insurance policy between an insurance company and an insurer, such a relationship may arise because an insurance company has greater knowledge, skill, and bargaining power than the insured.

In the insurance context, the Pennsylvania Supreme Court has permitted claims based upon the fiduciary duty owed by an insurer to an insured.  *Guthrie Clinic, Ltd. v. The Travelers Indemnity Co. of Illinois,* No. 3:00-CV-1173, 2000 WL 1853044, at *3 (M.D. Pa. Dec. 18, 2000) (citing *Birth Ctr. v. St. Paul Cos. Inc.*, 747 A.2d 376 (Pa. 2001)).  The *Guthrie* court noted that "[t]he breach of fiduciary duty . . . is not a breach of the terms of the contract but a breach of the duty, which arises because of the contract and flows from it." *Id.*

Gaffer is not covered by the fiduciary duties owed by an insurer to an insured.  A fiduciary relationship between an insurer and an insured only arise in limited circumstances.  *Conn. Indem. Co. v. Markman*, No. Civ. 93-799, 1993 WL 304056, at *5 (E.D. Pa. Aug. 6, 1993).   For example, an insurer assumes a fiduciary relationship when it "asserts a stated right under the policy to handle all claims against the insured, including the right to make a binding settlement." *Id.* (citations omitted).  In contrast, fiduciary duties between an insurer and insured do not arise based upon confidential information that the insurer has regarding the insured or the failure to exercise the duty of good faith and fair dealing.  *Id.*;  *Garvey v. Nat'l Grange Mut. Ins. Co.*, Civ. A. 95-0019, 1995 WL 115416, at *4 (E.D. Pa. Mar. 16, 1995).

Gaffer has alleged a breach of fiduciary duty based upon the "non-delegable duty of good faith and fair dealings to its insured and as such, held a fiduciary capacity to . . . Gaffer."  (Compl. ¶ 62.)  Even if Gaffer did fall within the scope of an insurer-insured relationship, no fiduciary duty arises based upon the duty of good faith and fair dealing between an insurer and insured.  *Garvey*, 1995 WL 115416, at *4 (""No Pennsylvania law establishes a fiduciary duty based on the duty of good faith and fair dealing.  Thus, . . . [an] alleged failure to exercise the duty of good faith and fair dealing does not give rise to an actionable claim for breach of fiduciary duty.'") (quoting *Conn. Indem. Co.*, 1993 WL 304056, at *5).

As stated previously in this Memorandum, Gaffer does not fall within the scope of an insurer and insured.  The two parties in this case were sophisticated companies whose business was reinsurance law.  Pennsylvania law states that parties to an arms length transaction generally do not owe fiduciary duties to one another.  A business transaction alone "is not enough to establish a fiduciary relationship; otherwise, every breach of contract would support such a claim."  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F.Supp.2d 526, 534-35 (M.D. Pa. 2006) (citing *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 23 (Pa. Super 2002).  The court in *eToll* further noted that there is a "crucial distinction" between the special confidence entered into in a fiduciary relationship and "entering into an arms length commercial agreement, however important its performance may be to the success of one's business."  *eToll*, 811 A.2d at 23.  As the parties in this case were contracting based upon arms length negotiations, no such fiduciary relationship existed.  Therefore, the Court will grant Defendants' motion to

18

dismiss with respect to this claim for Defendants USF&G and St. Paul Travelers.

    D.    Negligence

Lastly, Plaintiff alleges a negligence claim against the Defendants.  Defendants argue that the "gist of the action" doctrine applies, and that Plaintiff is alleging damages in tort for what is essentially a breach of contract claim.  The court in *eToll* explained the purpose for distinguishing between tort and contract claims:

> "Although they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law.  Tort actions lie for breach of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals . . . To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and interject confusion into our well-settled forms of action."

*eToll*, 811 A.2d at 14 (quoting *Bash v. Ball Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992).

The "gist of the action"" doctrine acts to foreclose tort claims, such as negligence, when: (1) the tort claim arises solely from the contractual relationship between the parties; (2) the alleged duties breached were grounded in the contract itself; (3) any liability stems from the contract; and (4) the tort claim essentially duplicates the breach of contract claim or is dependent upon the success of the breach of contract claim. *Reardon v. Allegheny College*, 926 A.2d 477, 486 (Pa. Super. 2007) (citations omitted). The critical distinction between a breach of contract claim and a tort claim is that the former arises from "'breaches of duties imposed by mutual consensus agreements between particular individuals,'" and the latter arises from "'breaches of duties imposed

by law as a matter of social policy.'" *Id.* (quoting *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. 2005)).

To establish a cause of action for negligence, the plaintiff must demonstrate: (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached that duty; (3) the breach resulted in injury to the plaintiff; and (4) the plaintiff suffered actual loss or damage. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

The duties that Plaintiff alleges are contractual duties.  Plaintiff alleges a duty of good faith and fair dealing, which is a contractual duty, as discussed in this Memorandum.  Similarly, Plaintiff alleges a fiduciary duty.  Such a duty would also arise from the contractual relationship between the parties.  Finally, Plaintiff alleges that Defendants had a duty to release letters of credit subsequent to the termination of the parties' Agreement.  Again, the duty to release the letters of credit is a contractual duty based upon the Reinsurance Agreement.  The negligence claim in this case arises solely from the contractual relationship between the parties.  The duties Defendants allegedly breached were grounded in the Reinsurance Agreement.  Furthermore, liability for damages stems from the Agreement, and recovery is steeped in the provisions of the Agreement.  The negligence claim alleged by Plaintiff essentially creates a breach of contract claim in tort.  The duties Plaintiff claims are not actionable duties in tort.  As the "gist of the action" doctrine applies to this claim, the Court will dismiss this claim against Defendants USF&G and St. Paul Travelers.

**CONCLUSION**

For the reasons stated above, the Court will grant Defendants' motion to compel arbitration with respect to Defendant Discover-Re.  The Court will also grant Defendants' motion to dismiss with respect to Defendants USF&G and St. Paul Travelers. An appropriate Order follows.


October  10  , 2007                        /s/ A. Richard Caputo
                                           A. Richard Caputo
                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GAFFER INSURANCE COMPANY, LTD.,

      Plaintiff,

          v.

DISCOVER REINSURANCE COMPANY,
et al.,

      Defendants.

NO. 3:07-CV-00580

(JUDGE CAPUTO)

## <u>ORDER</u>

**NOW**, this <u>10th</u> day of October, 2007, **IT IS HEREBY ORDERED** that

Defendants' motion to dismiss, or in the alternative to abstain, or in the alternative to

compel arbitration (Doc. 8) is **GRANTED** as follows:

1.     Defendants' motion to compel arbitration with respect to Defendant Discover

      Reinsurance Company is **GRANTED**.  Plaintiff shall proceed to arbitrate its claims

      against Defendant Discover Reinsurance Company in accordance with the

      governing Agreement.

2.     Defendants' motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED** with respect

      to Defendants United States Fidelity and Guaranty Company and the St. Paul

      Travelers Companies, Inc.

3.     This case is **DISMISSED** without prejudice and the Clerk shall docket the case

      **CLOSED**.

                        /s/ A. Richard Caputo
                        A. Richard Caputo
                        United States District Judge